1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JOSE M. OJEDA,                                    )    1:09cv01061 DLB
                                                  )
                                                  )
                   Plaintiff,                     )    ORDER REGARDING PLAINTIFF'S
                                                  )    SOCIAL SECURITY COMPLAINT
         v.                                       )
                                                  )
MICHAEL J. ASTRUE, Commissioner                   )
of Social Security,                               )
                                                  )
                                                  )
                   Defendant.                     )
_____          )

## BACKGROUND

         Plaintiff Jose M. Ojeda ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying his applications for disability

insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social

Security Act.  The matter is currently before the Court on the parties' briefs, which were

submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate

Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

         Plaintiff filed his application on January 3, 2005, alleging disability since August 8, 2004,

due to pain resulting from disorders of the spine.  AR 16, 64, 65.  After Plaintiff's applications

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page
number.

1   were denied initially and on reconsideration, he requested a hearing before an Administrative

2   Law Judge ("ALJ"). AR 42, 66-70, 74-78. On May 29, 2007, ALJ Stephen W. Webster held a

3   hearing. AR 47. He denied benefits on July 14, 2007. AR 10-23. The Appeals Council denied

4   review on April 23, 2009. AR 4-6.

5       Hearing Testimony

6       On May 29, 2007, ALJ Webster held a hearing in Fresno, California. Plaintiff appeared

7   with his attorney, Rosemary Abarca. Vocational expert ("VE") Tom Dachelet also appeared and

8   testified. An interpreter assisted during the hearing. AR 47.

9       Plaintiff testified that he was born in 1960 and lives with his wife and three children. AR

10  50-51. Plaintiff has a driver's license and does not limit his driving, though he gets fatigued

11  when he drives a lot. His children also take him to where he needs to go. Plaintiff is able to care

12  for his personal needs though his wife does the cooking, cleaning and laundry and his children do

13  the dishes and work in the yard. AR 51-52. Plaintiff completed the fourth grade in Mexico and

14  cannot read or write in English. He can speak very little English. AR 53.

15      Plaintiff watches television for an hour or two per day. He does not read because his

16  eyesight is poor due to his diabetes. AR 52. He visits friends and family and is able to attend

17  church. AR 53.

18      Plaintiff testified that he has not worked since August 8, 2004. He has problems with

19  diabetes and an injury to his neck and back. Medication and a chiropractor help relieve the pain

20  in his neck, back and lower back "a little." He had problems sitting and has to stand up when he

21  becomes numb. Plaintiff estimated that he could sit for about 15 to 20 minutes and could stand

22  for about 10 to 15 minutes. He can walk for a block or two. He thought the heaviest thing he

23  could lift was "a chair like this or something." AR 53-55

24      Plaintiff testified that surgery has been recommended for his back. He has tried injections

25  in his neck and back but they did not help. Plaintiff tried to pick up a gallon of milk one week

26  ago and it caused him pain. He also has a condition called "drop foot" in both of his feet. The

27  toes on his right foot go numb. This affects his ability to walk because he doesn't have good

28

balance and it also affects his ability to stand because his lower back and feet get numb.  AR 56-58

Plaintiff did not believe that he could return to his prior job as a farm worker because he has a lot of pain in his back and neck.  His medications also make his stomach upset.  AR 58.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could lift 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk for six hours.  This person would be precluded from overhead reaching.  The VE testified that this person could not perform Plaintiff's past work but could perform the positions of bagger, garment sorter and grader.  AR 59-60.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift 10 pounds on occasion and sit and stand at will.  The VE testified that this person could perform a reduced number of sedentary positions.  AR 61.

The ALJ asked a third hypothetical, although the transcript states that the related testimony is "inaudible."  AR 62.

Medical Record

On August 9, 2004, Plaintiff was in a motor vehicle accident.  When he arrived at the emergency room, he complained of neck and low back pain.  A lumbar spine x-ray revealed minimal anterior wedging of L1 and a thoracic spine x-ray showed mild to moderate compression deformity and anterior wedging of T11 associated with degenerative changes of T11/T12.  AR 142.  He was discharged later that night with diagnoses of hyperglycemia, cervical strain and left flank contusion.  Plaintiff was given a prescription for Vicodin and ordered to follow-up with his physician for possible diabetes.  AR 128-150.

An August 27, 2004, MRI of Plaintiff's cervical spine showed right posterior focal protrusion of the C6-7 disc with associated mild distortion of cord shape, bilateral foraminal stenosis and mild circumferential bulging of discs C3-4, C4-5 and C5-6.  AR 167-168

On December 8, 2004, Plaintiff was seen by Arturo Palencia, M.D, at Advanced Spine Care & Pain Management.  He complained of constant neck pain, worse on the left side, constant left arm pain and constant back pain.  He also complained of left leg pain and numbness.  On examination, Plaintiff appeared in moderate distress.  Range of motion testing in his neck

3

produced pain.  He could stand and walk on his heels and toes.  Range of motion testing in his back produced pain and he had tenderness to palpation in his lumber spine.  Compression test on the bilateral wrists was positive in the left wrist consistent with carpal tunnel syndrome and he had diminished sensation to pinwheel, bilateral C6 and C7 dermatomes.  Range of motion in his shoulders was within normal limits though he had obvious discomfort in the left shoulder. Lower extremity strength was 4/5 with mild low back pain and he had decreased sensation to pinwheel on the right S1 dermatome and left L5 dermatome.  Straight leg raising produced mild to severe low back pain.  Dr. Palencia diagnosed mechanical low back pain, mechanical neck pain, left sacroiliitis, rule out various causes, myofacial pain syndrome, left upper extremity radiculopathy, left chest wall pain, rule out rib fracture.  He recommended an MRI and started Plaintiff on muscle relaxants and pain medication.  AR 151-154.

On December 17, 2004, Plaintiff began treating with Alan P. Moelleken, M.D.  Plaintiff reported his pain level in his neck, left arm, back and both legs as an 8 out of 10.  On examination, Plaintiff's gait was normal and he could heel and toe walk.  He had diffuse tenderness in his cervical spine and limited range of motion.  He also had diffuse lumbosacral tenderness and limited range of motion.  Plaintiff had diminished sensation at left C5, C6, C7, C8, L3, L4 and L5-S1.  Plaintiff was hyperreflexic in his upper and lower extremities.  Dr. Moelleken reviewed the August 27, 2004, MRI and opined that the disc protrusion distorts his spinal cord.  He diagnosed cervical radiculopathy, cervical spinal cord compression, herniated cervical diss and lumbar problems consistent with traumatic disc herniation.  Dr. Moelleken recommended an MRI and EMG/NCS studies of his upper and lower extremities.  He also directed Plaintiff to continue his conservative care with Dr. Palencia.  AR 188-190.

A December 29, 2004, MRI of Plaintiff's lumbar spine showed L5-S1 mild bilateral lateral recess, left foraminal stenosis secondary to broad-based central annular bulge and moderate facet arthropathy.  It also showed mild to moderate bilateral facet arthropathy, L1-2 through L4-5 levels.  AR 187.

On January 10, 2005, Plaintiff saw Bradford Anderson, M.D., with complaints of constant neck, low back and left arm pain.  Plaintiff rated his pain as an 8 out of 10 and felt that it

was rapidly worsening.  Plaintiff was in mild distress.  He had limited range of motion in his neck and tenderness at the cervical paraspinal muscles on the right and the levator scapula muscle and trapezius on the left.  Plaintiff showed slight weakness on the left side compared to the right.  Dr. Anderson diagnosed degenerative disc disease of the cervical and lumbar spine, myofacial neck pain, lumbar facet arthritis and cervical foraminal stenosis.  AR 170.

Plaintiff returned to Dr. Moelleken on March 18, 2005.  He reported that his neck, back, arm and leg pain were worse and that the pain was severely affecting his quality of life.  On examination, Plaintiff had a somewhat more limited cervical and lumbar range of motion.  His examination was otherwise unchanged.  Dr. Moelleken reviewed the EMG and noted that it was abnormal and suggested a C6 and/or C7 radiculopathy on the left primarily and an S1 radiculopathy on the left.  It also suggested bilateral carpal tunnel syndrome.  The MRI revealed evidence of an L5-S1 annular disruption along with other pathology.  Plaintiff was interested in cervical epidural injections .  AR 186.

On April 4, 2005, Plaintiff underwent an Independent Medical Evaluation performed by Brian Grossman, M.D.  Plaintiff explained that he was on his way to work when he was involved in a motor vehicle accident in August 2004.  He reported that the pain in his low back was moderate to severe and constant.  The pain radiates down both legs and causes numbness and tingling in his back.  He also complained of pain in his neck and bilateral upper extremities. Plaintiff was in no acute distress.  Range of motion testing in the cervical spine was full, though he complained of pain at the limits of range of motion in all planes.  Motor strength was 5/5 in the upper extremities, with subjective loss of light touch sensation in a circumferential distribution in the entire left arm.  Head compression test resulted in radiating left arm pain and numbness in the midline, as well as right and left posterolateral positions.  Plaintiff's gait revealed a very noticeable left drop foot.  He could heel and toe walk, but on left heel walking, he appeared to be able to lift the forefoot only 1-2 cm off the floor.  Range of motion testing in his lumbar spine was normal, though he complained of pain.  Motor strength testing in the lower extremities was 5/5 with subjective decreased light touch sensation in a circumferential distribution from the groin to the toes of both legs, more severe on the left than the right.

Straight leg raising was positive for back and radiating leg pain bilaterally at 60 degrees. Hip range of motion was full but caused low back pain. Faber test caused increased low back pain bilaterally. There was tenderness throughout his lumbar spine. AR 172-175.

Dr. Grossman diagnosed cervical strain, disc protrusion, C6-7, with stenosis, lumbar strain, degenerative disc, L5-S1, with small central disc protrusion and annular tear with left foraminal stenosis. Dr. Grossman noted that it is difficult to accurately assess the degree to which the MRI findings are the cause of his symptoms because his examination reveals findings that suggest that he is magnifying his symptoms and level of disability. Dr. Grossman opined that Plaintiff could return to work with restrictions that would preclude lifting greater than 35 pounds, any more than occasional bending and stooping, and prolonged work overhead or work requiring extreme or repetitive cervical range of motion. AR 176-179.

On April 11, 2005, State Agency physician John T. Bonner, M.D., completed a Physical Residual Functional Capacity Assessment form. Dr. Bonner opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk about six hours and sit for about six hours. Plaintiff could not perform left arm or leg forceful pushing or pulling or use hand or foot controls. He could frequently climb ramps or stairs but could never climb ladders, ropes or scaffolding. Plaintiff could frequently balance and kneel and could occasionally stoop, crouch and crawl. Plaintiff could never perform overhead work with his left upper extremity and could frequently handle, finger and feel with his left upper extremity. Plaintiff had to avoid concentrated exposure to uneven terrain, heights and fast-moving equipment. AR 201-209. This opinion was affirmed on August 5, 2005. AR 209.

Plaintiff underwent his first epidural injection on April 19, 2005. He reported that it decreased the pain initially. AR 184.

Plaintiff returned to Dr. Moelleken on May 17, 2005. Plaintiff continued to complain of neck and back pain. He had decreased sensation at left C5-C8 and left L3-S1. Straight leg raising was positive for low back pain. Dr. Moelleken wanted to proceed with a second cervical injection as the first helped decrease the pain. He also wanted to continue conservative treatment and medication. Both Dr. Moelleken and Plaintiff wanted to avoid surgical options. AR 183.

On September 9, 2005, Plaintiff was seen at National Health Services, Inc., and complained of neck and low back pain.  He reported that the two injections did not provide any remarkable relief and he rated his pain as a 7 out of 10.  On examination, he had decreased range of motion, tenderness, spasms, and restriction of segments C7-T2, T4-T6 and L1 and L2. Straight leg raising was positive bilaterally.  Plaintiff was diagnosed with disc disease, segmental dysfunction and radiculopathy.  AR 235.

Plaintiff continued to complain of back and neck pain from September 15, 2005, through June 12, 2006.  AR 291-310.

Plaintiff also received treatment from National Health Services, Inc., for his hypertension and diabetes.  AR 214-255.  Treatment notes dated April 26, 2007, indicate that Plaintiff's diabetes and hypertension were well controlled.  AR 214.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of diabetes mellitus and a history of motor vehicle accident with residual neck and back pain.  AR 18.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work that precludes lifting and carrying more than 20 pounds occasionally, 10 pounds frequently, standing, walking or sitting for more than six hours and overhead lifting.  AR 19-20.  Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform a significant number of jobs in the national economy and was therefore not disabled.  AR 22-23.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (diabetes mellitus and a history of motor vehicle accident with residual neck and back pain) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but can (5) perform a substantial number of jobs in the national economy. AR 18-23.

8

Here, Plaintiff argues that the ALJ failed to (1) properly assess his neck and upper extremity limitations; and (2) properly assess his testimony.

**DISCUSSION**

A.    Plaintiff's Neck and Upper Extremity Limitations

Plaintiff first contends that the ALJ improperly analyzed the opinions of Dr. Grossman and Dr. Bonner in formulating his RFC.  Specifically, he contends that the ALJ "parceled out those portions of Dr. Grossman and Dr. Bonner's opinion to fit his conclusions..."  Opening Brief, at 10.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).  An ALJ may rely upon the state agency physician's findings as to claimant's ability. 20 C.F.R. §§ 404.1513(c), 404.1527(f)(2)(i), 416.913(c), 416.927(f)(2)(i).

Here, the ALJ cited the opinions of both Dr. Grossman and Dr. Bonner in assessing Plaintiff's RFC.  AR 21.  He explained:

> An orthopedic surgeon examined the claimant and determined he could return to work with a limitation of lifting no more than 35 pounds and with no limitations assigned to his abilities to perform sitting, standing or walking (Exhibit 4F, p. 7).  The opinion of the orthopedic surgeon indicates that claimant is limited to a range of medium work activity.  The state agency medical consultant determined that claimant was limited to a range of light work activity that accommodated his neck pain by limiting his use of his left upper extremity for reaching overhead (Exhibit 6F, pp. 2-8).

> The claimant has provided no objective medical evidence or objective medical opinion to rebut the opinion of the orthopedic surgeon or the state agency medical consultant.  A limitation to light work activity as a prophylactic measure would help avoid the possibility of further strain or injury to the claimant and would likely enhance his ability to perform work activity on a consistent and ongoing basis.

AR 21.

9

With regard to Dr. Grossman, Plaintiff first argues that the ALJ "mistook 'independent medical examiner' to be an agreed medical examiner." Opening Brief, at 10. He contends that Dr. Grossman was a defense medical examiner in Plaintiff's workers' compensation action and that his opinion "should be read in that light." Opening Brief, at 10. Despite the labeling of the report as an "Independent Medical Evaluation," Plaintiff contends that it was a defense examination because the report is directed to State Farm with no copies to other parties. Regardless of whether Dr. Grossman was a defense examiner or an agreed medical examiner, the ALJ is not required to treat the examination and opinion differently based solely on that distinction. Plaintiff cites *Desrosiers v. Sec'y of Health and Human Serv.* to support his argument that the ALJ has a duty to properly educate himself of the worker's compensation arena. *Desrosiers v. Sec'y of Health and Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988). That case, however, dealt with an ALJ who incorrectly applied worker's compensation terminology to the Social Security analysis. It does not impose a classification of examining physicians based on the nature of the worker's compensation examination. In fact, the Ninth Circuit has specifically rejected this position. See *Batson v. Comm'r*, 359 F.3d 1190, 1196, n. 5 (9th Cir. 2004) (rejecting Plaintiff's contention that a doctor hired by a workers' compensation insurance company was biased "because we have held 'the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them.' *Lester*, 81 F.3d at 830.").

Plaintiff next argues that Dr. Grossman's report does not support the RFC finding because the ALJ did not address or account for Dr. Grossman's limitation that precludes work requiring extreme or repetitive cervical range of motion. Defendant contends that the ALJ's RFC finding that Plaintiff was precluded from performing overhead reaching accounts for Dr. Grossman's cervical range of motion limitations. The Court does not agree that a limitation to overhead reaching with the upper extremities necessarily accounts for limitations in cervical range of motion. Indeed, although Dr. Bonner attributes the overhead reaching limitation in part to decreased neck range of motion, Dr. Grossman found pain in the limits of cervical range of motion "in all planes." AR 174, 204.

Nonetheless, an ALJ may reject the uncontroverted opinion of an examining physician if he provides "clear and convincing" reasons. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

Here, however, the ALJ did not explain why he rejected Dr. Grossman's cervical range of motion limitations. In fact, the ALJ didn't even mention Dr. Grossman's cervical range of motion limitations. Instead, he describes his limitations as "lifting no more than 35 pounds and with no limitations placed on siting, standing or walking." AR 21. Although the ALJ need not discuss all evidence in the record, the ALJ may not reject significant probative evidence without explaining why. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984).

Similarly, Plaintiff contends that the ALJ failed to explain why he did not include certain aspects of Dr. Bonner's opinion in the RFC analysis. Dr. Bonner precluded Plaintiff from performing left arm or leg forceful pushing or pulling or using hand or foot controls. AR 202. The ALJ again failed to mention these limitations and failed to explain why he rejected them.

The ALJ's failure to address why he dismissed certain aspects of Dr. Grossman and Dr. Bonner's opinions is especially problematic given the ALJ's finding that Plaintiff could perform *light* work. Light work is defined as:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with *some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added).

1    The VE was not presented with any hypothetical that contemplated a preclusion from

2    pushing or pulling arm or leg controls.[2]

3        The ALJ's treatment of the medical evidence in formulating Plaintiff's RFC was

4    therefore not supported by substantial evidence and was not free of legal error.  Remand will be

5    discussed at the end of this opinion.

6    B.    Plaintiff's Subjective Complaints

7        Finally, Plaintiff argues that the ALJ failed to properly assess his testimony.

8        In _Orn v. Astrue_, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

9    pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's

10   subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other
> non-exertional impairment.  _See Fair v. Bowen_, 885 F.2d 597, 603 (9th Cir.1989).
> However, to discredit a claimant's testimony when a medical impairment has been
> established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  _Morgan_,
> 169 F.3d at 599 (quoting _Lester_, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive."  _Id._  Where, as here, the ALJ did not find
> "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the
> claimant's testimony must be clear and convincing."  _Id._
>
> Social Security Administration rulings specify the proper bases for rejection of a
> claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be
> supported by reasons that do not comport with the agency's rules.  _See_ 67 Fed.Reg. at
> 57860 ("Although Social Security Rulings do not have the same force and effect as the
> statute or regulations, they are binding on all components of the Social Security
> Administration, ... and are to be relied upon as precedents in adjudicating cases."); _see
> Daniels v. Apfel_, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at
> step three of the disability determination was contrary to agency regulations and rulings
> and therefore warranted remand).  Factors that an ALJ may consider in weighing a
> claimant's credibility include reputation for truthfulness, inconsistencies in testimony or
> between testimony and conduct, daily activities, and "unexplained, or inadequately
> explained, failure to seek treatment or follow a prescribed course of treatment."  _Fair_,
> 885 F.2d at 603; _see also Thomas_, 278 F.3d at 958-59.

Here, the ALJ rejected Plaintiff's testimony to the extent it conflicted with his RFC

finding, explaining:

> The claimant's allegations about his limitations are inconsistent with the objective
> medical opinions in the record and he has provided no objective medical evidence or
> objective medical opinion to rebut those opinions.  The claimant's allegations about his

---

[2] As noted in the section setting forth Plaintiff's testimony, the third hypothetical was not transcribed.
Given the fact that the ALJ wholly failed to recognize Dr. Bonner's pushing and pulling limitations, it is unlikely that
he propounded a hypothetical to the VE with such limitations.

limitations are unreasonably extreme in light of the objective medical opinions in the record and the visualized abnormalities in the MRI scans in the record.

AR 21.

The ALJ therefore rejects Plaintiff's testimony based on (1) the opinions of Dr. Grossman and Dr. Bonner as to Plaintiff's functional limitations; and (2) the objective medical evidence.

The ALJ's credibility analysis is improper. First, the ALJ erred in citing the opinions of Dr. Grossman and Dr. Bonner. Differences of opinion, while relevant to the RFC finding, are not a proper basis for rejecting a claimant's testimony. Such differences are not contemplated by SSR 96-7p or case law as proper factors in discrediting a claimant's testimony. Certainly, in almost all claims that reach the hearing level, there will be opinion evidence that contradicts the claimant's description of his abilities, and allowing an ALJ to cite opinion evidence would result in the rejection of virtually all subjective testimony.

This leaves the ALJ's citation to the lack of objective medical evidence. While the ALJ may consider objective evidence, it may not be the sole factor in discrediting a claimant's testimony. _Lester v. Chater_, 81 F.3d 821, 834 (9th Cir. 1996); see also _Bunnel v. Sullivan_, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because claimant fails to produce medical evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings.")

Insofar as Defendant points to the ALJ's finding that the record contained no evidence of certain symptoms, this does not save the ALJ's credibility analysis. The ALJ's reference to a lack of nerve root compression, etc., was made at the step 3 determination of whether Plaintiff's back impairment met or medically equaled section 1.04 of the Listing of Impairments. AR 19. The Court may not accept post hoc explanations, _Barbato v. Comm'r_, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996), and it may not speculate as to the ALJ's findings, _Lewin v. Schweiker_, 654 F.2d 631, 634-35 (9th Cir. 1981). A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner. _Stout v. Comm'r_, 454 F.3d 1050, 1054 (9th Cir. 2006).

1    Therefore, the ALJ's credibility analysis is not supported by substantial evidence and is

2    not free of legal error.

3    C.    Remand

4    Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

5    power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

6    or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

7    In social security cases, the decision to remand to the Commissioner for further proceedings or

8    simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d

9    599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original

10   administrative proceedings, a social security case should be remanded.  Where, however, a

11   rehearing would simply delay receipt of benefits, reversal and an award of benefits is

12   appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

13   F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no

14   useful purpose would be served by further administrative proceedings, or where the record has

15   been thoroughly developed.").

16   Here, the Court finds that additional proceedings can remedy the deficiencies cited above

17   and the action should therefore be remanded for further proceedings.  On remand, the ALJ should

18   address all limitations set forth by Dr. Grossman and Dr. Bonner and conduct a proper credibility

19   analysis.

## CONCLUSION

21   Based on the foregoing, the Court finds that the ALJ's decision is not supported by

22   substantial evidence and is not free of legal error.  The decision is therefore REVERSED and the

23   case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk

24   of this Court is DIRECTED to enter judgment in favor of Plaintiff Jose M. Ojeda and against

25   Defendant Michael J. Astrue, Commissioner of Social Security.

26   IT IS SO ORDERED.

27   Dated:    **July 22, 2010**          **/s/ Dennis L. Beck**
                                          UNITED STATES MAGISTRATE JUDGE

28